The Spanish Lake Truck & Casino Plaza. Okay, and we will hear from Mr. Bernard, representing the appellant in this case, and he will certainly tell us how to pronounce her name. Yes, Your Honor. My name is—may it please the Court, first of all. What is her name? Etienne. Etienne. Etienne. Etienne. Etienne. How are you? South Louisiana. May it please the Court, my name is Carl Bernard, and I represent the plaintiff appellant in this matter, Ms. Esma Etienne, in the matter before this Court. We respectfully request that this Court would reverse the district, the lower court's decision on summary judgment, dismissing plaintiff's claim against the defendant appellee, Spanish Lake Casino, Truck & Casino Plaza, which we believe discriminated against her based upon her race and or color by failing to promote her or even consider her for the vacant casino manager's position. Just some brief background facts on this particular case, Your Honors. We've read the briefs, and we're pretty familiar with that, and we are familiar with the issue about whether she was too black. We're familiar with the issue about how to approach the analysis in this case in terms of direct evidence or nondirect evidence. And to tell you the truth, the questions that we have most, I think, are counsel opposite. Now, you can lay out just some of your time here, and then if you think you need it for rebuttal, you can use your full time on rebuttal. But tell us anything you need to think we should know before we ask him about some of these issues that he presents that are more determinative, I think, than some of the things that you are arguing that we don't disagree with. Your Honor, the facts of this case are pretty plain and simple, so I'll reserve my time. Okay, good. Thank you very much. And you've not saved . . . we'll preserve that time for you now if you think you need it after we talk with Mr. Pennington. Okay, Mr. Pennington. May it please the Court. It's rather surprising to be up here this quickly. Well . . . I won't be able to answer the questions that you're going to shoot at me. Your Honor . . . Well, I mean, you've got . . . the one thing is the two black . . . in other words, that is . . . I guess you concede, or do you, that that is a violation of Title VII to refuse to hire someone for a particular position because they are too black to qualify for the position. Your Honor, we researched that issue, too black, the words too black. Okay. That's just like saying you're not white enough. We don't know what that means, Your Honor. Well, I can tell you what it means. I'm not . . . you know, I wasn't born yesterday, but . . . By a long shot. By a long shot, I wasn't born yesterday. But too black means you ain't white enough, and if you ain't white enough, that's racial discrimination. Pure and simple. And the word color also appears . . . And color appears in Title VII, too. So, I mean, you can . . . as far as I am concerned, you can forget that argument. Too black is protected by Title VII. Well, I'm sorry. We did not make that argument. They're the ones that made that argument. I don't care who made it. I mean, I'm just telling . . . to clear the air, that's a non-issue, as far as I'm concerned. And I think . . . We agree. We agree. Okay. Well, then move on. And really, what this case is about, it's about a nice woman who was not discriminated against and did not receive a position because she was not qualified. That is what this case is . . . No, no. I mean, it's more than that, because . . . at least from their point of view, and that's what we're talking about. This is summary judgment, right? Yes. All right. Summary judgment, she says, look . . . I mean, her argument is, I was never considered for the job, because I was not qualified. And why was I not qualified for even consideration is because I was too black. And she cites evidence to support that. Whether that's true or not, I don't know. But she cites evidence to support that. So then she says . . . then you say, well, somebody else was hired because she was better qualified. Well, that may be so. The other one may have been better qualified, but the plaintiff here never got a chance to even offer her qualifications. She was never considered from the get-go. So it doesn't really matter. You didn't hire this other woman because she . . . and I'm talking about from a summary judgment point of view. I'm not talking about the merits of the case. But from their point of view, they never got a chance to even be considered for the job. So your client was not . . . or the woman who got the job was not hired because she was better qualified. She was the only qualified person. Your Honor, the record makes it clear that the qualification issue was considered. That is to say that Mr. Bernard Teredot, the general manager of the company, in his affidavit and in testimony before the Unemployment Board, stated specifically that he knew of Ms. Atien's waitress desires and her waitress abilities, but that he also knew, and he had been told by her and by her supervisor, Ms. Johnson, that Ms. Atien never wanted to work nights. This was a position for a night manager. It was not a position for a day manager. And so he also had been with her for over four years and was well aware of the fact that she had none of the experience that this other lady had with regard to doing the things that a manager was going to be required to do. I see you're looking at the record and, you know, I have a whole list and the record is replete with a list of the things that Ms. Davide, the actual hiree, was qualified to do as manager. I'm not . . . I agree with you to the extent that if there was no incriminating evidence and, you know, statements, and it may ultimately not prove evidence. We're talking about summer judgment. That she was too black to fill the position, you would be home free. I mean, because she clearly was . . . the person you hired was qualified and Ms. Ednene was not so much better qualified that qualifications would have been a determinative factor in the decision. I agree with that. And . . . You're just stuck with this. You're stuck with these affidavits. This is me. This is me. But you're . . . Well, you're important, Your Honor. Huh? It's very important what you think. Yeah, but I'm just one-third important. I understand, Judge. Let me just say this. We have this affidavit and you've addressed that Johnson affidavit that, in my view, is the only thing in this record that even raises a tribal issue. This is the only thing that could even come close to doing that and we suggest to the Court that the law in the Fifth Circuit is clear that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movement's burden in a motion for summary judgment. She's filed an affidavit about it. They have testimony of it. Too black to be considered for this position and that at least indicates that it's a mixed discharge, that she would concede a mixed motive discharge. And if she could try this case either way she wanted to, I suppose, but she would concede, at least for the purposes of argument, that the other woman was better qualified. But the motive was better qualifications, but it was a mixed motive case because race entered into the case because she was too black. And then a jury gets to decide which of the mixed motives, and then she's got a burden, but for the race she would have gotten the job. Judge, that's what that affidavit says, but the affidavit is not worth the paper it's written on, in my view. What do you mean? The Johnson affidavit. Where the too black comes from is not from Ms. Etienne. She gives a self-serving affidavit that is after the fact. I mean the horse is already out of the barn at that point because she testified previously under oath that there was no discrimination. She testified specifically that there was no discrimination at the Spanish Lake Casino and there was a myriad of testimony in the record that there was no discrimination at this casino. She testified that the reason that all of this happened, that the reason she filed her EEOC complaint was because they did not respect her loyalty. They did not respect the seniority that she had, that they made her feel like a, what did she say, my service wasn't worth nothing. That's what happened, and she testified in the unemployment benefits case, that's why I filed the EEOC complaint. That's why she filed it. There was no discrimination. Again, I go back to this Johnson affidavit where the too black, this subjective, whatever that is, too black subjective criteria by this affiant when in fact the affidavit itself is immaterial and it has no probative value. And I say that. The affidavit, are you considering it in two parts? Are you saying that the fact that she says in there, the statement in the affidavit as I understand it, said that your client had on occasions said that Ms. Ettinger was too black to occupy positions similar to the one that is at issue here. Now, that, you're saying that is totally irrelevant? Are you saying the fact that that may have been a reason is totally irrelevant? No, that's what I'm saying. I'm saying that there is no underlying factual support for these subjective statements that she's making. She is making statements about what presumably are observations, but yet she gives no specifics relating to the underlying facts. There are no underlying facts to support this, and that's the problem with the affidavit. Are you saying that there are no underlying facts to support the allegation that the management, whoever it was, I've forgotten who it was, said that she was too black to occupy those positions and that the company had a policy of separating positions according to color? You know, just in a friendless sort of way, I guess. You know, I mean, we put people of this shade over here and this shade here and this shade there. I mean, that's what I got from it, and you can tell me why. Again, the record is replete with such contradictory, overwhelming testimony. Five to one. The management, as the Court is aware. But five to one, you know, five to one, one in five will get your cross-examination, I mean your sum of judgment denied. Well, when I say five to one, I'm talking about the management positions. I think the Court's aware of that, that in this particular case, at the time that this hiring event occurred, the ratio was they had six total managers, and the ratio of the managers in this business was five minority managers to one white manager. When Ms. David was hired, when Ms. David was hired, it changed it to four to two. But again, simply another indication that this record is just totally overwhelmingly descriptive of no discrimination other than this subjective, conclusory Johnson affidavit that the Court is dealing with here.  And give you an opportunity to make your case the way you see this case in your argument. Okay. And again, I'm going to stay on this affidavit for a few minutes because I think it's important. There's no temporal relationship. That is to say that when she talks about these various things that Mr. Bernard Teredot presumably said or allegedly said, she doesn't state a time frame of when these things were supposedly said or how, when, or under what circumstances such statements might relate to the hiring of David or the failure to hire Ms. Etienne. There's no underlying temporal background with regard to that. The statements attributed to Teredot are ambiguous. They talk in terms of duties and responsibilities. There's no statements that are really directed towards hiring practices. You have waitresses and you have managers and you have all these people working at this place, and some are black, most of them are black as a matter of fact, and some are white. And you have a circumstance where each person has duties and responsibilities. Ms. Etienne, as a waitress, had duties and responsibilities. She specifically denied in her sworn testimony that her duties or responsibilities were in any way different than the duties and responsibilities of any other waitress on that staff. Specifically denied it. She admitted in open, well, in the unemployment hearing, under oath, that she was never treated any differently with regard to her chores or with regard to her duties or responsibilities. So again . . . We're not concerned about her waitress position. We're concerned about the manager position. Concerned about the what? The position for which she was not considered. Okay. And again, the position for which she was not considered was . . . I go back to where we went at the beginning, and that is that she was not considered because our manager knew. And I think if you go to the . . . assuming that there's a prima facie case, which I really shouldn't assume because she's not qualified to begin with, and therefore she doesn't meet the first . . . the second leg of the McDonnell-Douglas test. But if the court goes as far as to assume that she was qualified, which is . . . the record does not support that in any shape, manner, or form, then the articulated reason for the hiring decision is unequivocal. I mean, again, the record is absolutely clear that the hiring decision was made because this individual who was hired had been . . . previously worked there as an assistant manager on the weekends. She had gone to another competing casino and was being trained as an assistant manager there. She had received training on a myriad of all of the different gaming machines that were available at the Spanish Lake Casino as they were over at the Broadbridge Casino, as we indicated in our brief. She would come back and actually bring customers with her when she came back to Spanish Lake, and that was a real consideration for Mr. Teredot to bring her back. In Mr. Teredot's mind, and I guess in gambling parlance, he had struck it rich. Where is it located, this gambling casino? It's in New Iberia, in the New Iberia area. I'm not even really sure, but in any event, I think that the point I'm trying to make is that when the court reviews the record in these proceedings and sees the overwhelming evidence of no discrimination, and I really . . . you know, if the court says I'm wrong, then I'm wrong, but I suggest to this court that there is overwhelming evidence of no discrimination, including the plaintiff's own sworn testimony, not to mention all the other affidavits, the deposition testimony and so forth, that makes the Johnson affidavit without any underlying factual basis for her subjective assertions completely immaterial and irrelevant. Okay. I think we've got your argument, and we're going to give you a little time for rebuttal. Thank you. After we hear from Mr. Pennington. Okay, Mr. Pennington, what do you need to say now? Mr. Bernard, Mr. Pennington just . . . Beg your pardon? Mr. Bernard. Oh, I'm sorry. You, Mr. Bernard. I'm sorry. Sorry, sorry. First of all, counsel makes the assertion, asserts the fact that Mrs. Etienne did not want the night manager's position. We think by the conduct of Ms. Etienne after she was denied the opportunity to apply for the night manager's position and complaining to her supervisor, Mr. Bernard Teredot, that she did not, that she, in fact, wanted the position, that she was wondering why she didn't have the opportunity to apply for the position and that she filed an EEOC questionnaire not long thereafter. Now, what are you relying on? Are you relying on affidavits that you submitted or . . . Yes. . . . or a testimony or what? All of this is in the record, Your Honor. Okay. All of this is in the record. In addition, counsel points out the fact about qualifications when Ms. David, under oath, testified that the only difference between the night manager's position and the waitress bartender's position is reconciling casino receipts, handling casino money, and which just involves adding and subtracting casino receipts and reconciling the money that they've given to the patrons who have cashed out. I think based upon and regarding training, you know, Ms. Etienne was a longtime employee. The casino opened up in 2004. She was employed from 2005 until 2009. In fact, she helped train Ms. David. But, Your Honor, she was already disqualified from receiving any type of training when it came to handling casino receipts and simply because of the color of her skin. But counsel makes a lot to do about Ms. Janine Johnson. Well, Ms. Janine Johnson, who is the author of the affidavit that counsel disparages in his argument, was the individual who was in charge of running the casino since the casino's inception in 2004. She was, in fact, in charge of the entire casino operation with Mr. Teredot and his wife, Anna Teredot. She was responsible for evaluating the employees' job performances. She has no bones. She wasn't fired from her position. She has no skin in this matter, no beef in this matter. She just offered an affidavit based upon the information that she was familiar with in daily conversations with the Teredots over a four- or five-year period. And during that time, it was very, very clear that what is also in the record is that all of the—counsel makes mention of the African-Americans. There are African-Americans that are in managerial positions, but the African-Americans that counsel should be able to attest, they're all lighter-skinned than I am that are in these managerial positions and in the casino. In this particular area, New Iberia, if you haven't been there, it's a beautiful area. I'm from that particular area myself, but it is steeped in plantation-style mentality where you kind of divide and separate dark-skinned folks from light-skinned folks where you have dark— Closer to social class. And so this is not unusual. It sounds unusual if you're not from that particular area, but that is not an unusual event that occurs and has occurred in this particular case. I think, as the Court has mentioned, although the lower court indicated that the main issue is dealing with qualifications, we vehemently disagree with that, but the main issue is not so much about whether or not Ms. Etienne was qualified, but that she was eternally disqualified from ever being considered for the manager's position in this case, and that's why we believe that the matter should be remanded to the lower court. Okay. Thank you very much, Mr. Bernard. We certainly appreciate your argument, and Mr. Pennington, you have a couple of minutes or so to respond to what we've just heard. Mr. Chairman, with all respect to counsel, much of what he said today is truly outside the record, and there's a lot of things in their appeal brief that is outside the record, beyond the record, and I mean to— We'll decide it on the basis of the record. I'm trying to rely on the record in this case, and I think the record of this case demonstrates clearly. We have, for example, on qualifications, we have this affidavit, first of all, from Mr. Teredot, who explained his reasoning as to why he hired this lady, Ms. David, the actual manager who came on, but we also have an affidavit from Mrs. Elwell with the Broadbridge Casino, who was involved as the HR representative and who was involved in the training of this lady, and as Bernard Teredot had testified to, the casino manager, the general manager testified to, he kept up with this lady over the two-year period that she was gone from our casino, from Spanish Lake, and he knew that she was doing a good job, and he knew that she was progressing on this managerial train, and so the Elwell deposition sets forth what Ms. David was capable of doing, and the reason why she was hired in that was that she was now capable in vault accounting, machine operations, machine diagnostics, transfers of funds and drops, buyouts, customer issues with tickets, use of hard meters, I don't even know what that is, and all of these are related to the exact same machines that they had at the Spanish Lake because there was some relationship with those machines and the Spanish Lake machines. And so Mr. Teredot, it's conceivable to me that he was excited, and I think we argued that he was excited about the prospect of having this person come in, immediately step onto the floor and take over and not have to train somebody over some period of time. Mr. Teredot was clearly aware that Ms. Etienne, again, a nice lady, was not capable of running a casino. She was just not capable, and also he had been told that she didn't want to work at nights, and as I said earlier, this was a night job. And so if you look at the McDonnell Douglas situation, and if you go back, and Mr. Bernard talks about that Ms. Johnson had been involved with Mr. Teredot for four or five years, and she stayed there for four or five years listening supposedly to this rant. That's what he's telling this court, and in fact, over this four or five year period, there's no evidence in the record of any sort of issues at this casino related to race, not a one. What I think is very important about Ms. Johnson's affidavit is what she did not say. What the affidavit of Ms. Johnson does not say, and there's no evidence otherwise in the record, does not say that she trained Ms. Etienne for a manager position, even though Ms. Johnson was a manager. It does not say that Ms. Etienne was qualified as a manager. It does not say that she told Ms. Etienne that she was quitting and that the job would soon be available, so go tell somebody that you're interested, because at that point, nobody knew she was interested. It does not say that Etienne ever expressed an interest in the job. That affidavit doesn't say that. It does not say that Etienne was too black to be a manager. It doesn't say that she was too black to be a manager. It says she was too black to do certain duties and responsibilities. That's what the affidavit said. It does not say she was too black. Were those part of the manager's jobs or not? I'm sorry, say again. Were those part of a manager's job or not? I think that the manager's job speaks for itself. Duties and responsibilities, I don't know what she's saying in the affidavit because there's no underlying facts. Duties and responsibilities of a waitress, duties and responsibilities of a manager, she just simply says she was too black. She was, I think, too black. I can't remember now, but too black for duties and responsibilities in general, okay, so that she's condemning basically everybody at the place, and there's no evidence in the record as to how black these people were, what hue they were or anything else, and I'm not sure what sort of floodgate the court opens up when we start going, what if, for example, Spanish Lake had hired a black person for this position, but the black person happened to be a lighter black person? What does the court do with something like that? I mean, that's the problem I'm having with all of this. It's not an everyday situation, but we can deal with it. And I think unless the court has other questions, I think that's all I have. Thank you very much for a spirited argument, and I want to remind all the parties here that we're talking about summary judgment. We're not talking about the ultimate merits. That concludes the case.